CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
SEP 29 2008
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| TAMMY MONK, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5:07CV00020 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| STUART M. PERRY, INC., | ) By: Hon. Glen E. Conrad |
| | ) United States District Judge |
| Defendant. | ) |

Tammy Monk, a former employee of Stuart M. Perry, Inc. (Perry), filed this action on February 21, 2007. Monk alleged that Perry engaged in sex discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-2(a)(1), and retaliatory conduct in violation of Title VII, 42 U.S.C. § 2000e-3(a), and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 215(a)(3).[1] On March 24, 2008, Perry moved for summary judgment, and by order entered May 13, 2008, the court referred the motion to United States Magistrate Judge Michael F. Urbanski for appropriate proceedings, pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge held a hearing on the motion for summary judgment on June 30, 2008. The magistrate judge has now filed a Report and Recommendation (R&R), in which he recommends that the motion for summary judgment be granted. For the following reasons, the court will adopt the magistrate judge's recommended disposition and grant the motion for summary judgment.

---

[1] Monk is no longer pursuing her sex discrimination claims.

## Background

Perry operates a small stone and asphalt business in Winchester, Virginia. In 1996, Perry hired Monk to work as one of its dump truck drivers. In that capacity, Monk hauled asphalt and stone to customers throughout northern and central Virginia.

In March of 2002, Monk filed suit against Perry, alleging that the company discriminated against her in violation of Title VII and the Equal Pay Act (EPA). Perry was granted summary judgment with respect to Monk's Title VII claims, but her claim for discrimination in compensation under the EPA proceeded to a bench trial before United States Magistrate Judge B. Waugh Crigler on March 14, 2003. Judge Crigler ultimately found in favor of Monk and awarded her $420.00 under the EPA.

Monk returned to work for Perry on March 17, 2003. In the instant action, Monk alleges that, shortly after returning to work, she was subjected to both specific instances of retaliation and a retaliatory hostile work environment as a result of filing the earlier action, as well as for subsequently filing charges of discrimination with the EEOC.[2] In addition to allegations of more "minor workplace slights" (R&R at 2), Monk alleges that in the months following her first employment action, she was reassigned from hauling asphalt to hauling stone; that on December 1, 2003, she was suspended for two days without pay for two unexcused absences; and that she was constructively discharged in June of 2005, when Perry failed to equip her dump truck with an electric tarp.

---

[2] On November 8, 2004, Monk filed a charge of discrimination alleging that she had been discriminated against in retaliation for having previously filed suit against Perry. On February 14, 2005, Monk filed a charge of discrimination alleging that she had been "retaliated against and laid off in January 2005, after filing "several claims with the EEOC." (Pl's Resp. to Summ. J., Ex. 21).

2

On March 24, 2008, Perry moved for summary judgment, arguing that some of Monk's allegations of retaliatory conduct are procedurally barred from consideration, and that her retaliation claims fail on the merits. In his Report and Recommendation, the magistrate judge rejected Perry's first argument, but ultimately concluded that Perry is entitled to summary judgment on the merits of Monk's retaliation claims.

Applying the United States Supreme Court's decision in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the magistrate judge first noted that because Monk claims that Perry's alleged misconduct gave rise to a hostile work environment, all of the incidents of misconduct cited by Monk can be considered, rather than only those which occurred within 300 days of the date on which her charges of discrimination were filed with the EEOC. The magistrate judge then analyzed Monk's retaliation claims under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and ultimately concluded that Monk has not established a prima facie case for retaliation or shown that Perry's legitimate, non-retaliatory reasons for its conduct were pretextual.[3]

## Standard of Review

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[3] The magistrate judge noted, and the parties agree, that a plaintiff alleging retaliation under the FLSA must satisfy the same elements as are required in a retaliation action under Title VII, and thus that no separate analysis is necessary. See Darveau v. Detecon, Inc., 515 F.3d 334, 342 (4th Cir. 2008) ("[W]e and other courts have looked to Title VII cases in interpreting the FLSA."); see also Whitten v. City of Easley, 62 Fed. Appx. 477, 480 (4th Cir. 2003).

3

56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

The magistrate judge's Report and Recommendation has no presumptive weight, and this court retains the responsibility to make a final determination. Mathews v. Weber, 423 U.S. 261, 270 (1976). Consequently, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court is only required to review de novo those portions of the report to which specific objections have been made. The court need not conduct a de novo review "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate judge's report." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

In this case, specific objections have been filed by Monk and Perry. Monk argues that the magistrate judge erred in concluding that Perry is entitled to summary judgment on the merits of her retaliation claims pertaining to her two-day suspension and Perry's failure to provide an electric tarp.[4] Perry argues that the magistrate judge erred in rejecting its alternative argument that some of the alleged incidents of retaliation are procedurally barred from consideration.

---

[4] Monk has not objected to the magistrate judge's conclusion that Perry is entitled to summary judgment with respect to Monk's claim that her work assignment was changed in retaliation for proceeding to trial in her earlier lawsuit. Likewise, Monk has not objected to the magistrate judge's conclusion that her remaining allegations of retaliation, taken together, are insufficient to establish that she was subjected to a retaliatory hostile work environment.

4

## Discussion

I. <u>Monk's Two-Day Suspension</u>

Monk first contends that she was suspended without pay for two days in December of 2003, in retaliation for proceeding to trial in her earlier lawsuit on March 14, 2003. As the magistrate judge explained in his Report and Recommendation, a claim of retaliation is evaluated under the <u>McDonnell Douglas</u> burden-shifting framework. See <u>Lettieri v. Equant, Inc.</u>, 478 F.3d 640, 649 (4th Cir. 2007). Monk must first establish a prima facie case of retaliation, by showing that she engaged in protected activity;[5] (2) that Perry took an adverse action against her; and (3) that there was a causal connection between the protected activity and the adverse action. <u>Tinsley v. First Union Nat'l Bank</u>, 155 F.3d 435, 443 (4th Cir. 1998). If Monk establishes a prima facie case of retaliation, the burden then shifts to Perry to articulate a legitimate, non-retaliatory reason for the adverse action. <u>Anderson v. G.D.C., Inc.</u>, 281 F.3d 452, 458 (4th Cir. 2002). If Perry succeeds in doing so, the burden shifts back to Monk to show that the asserted reason is merely pretext for retaliation. <u>Id.</u> "At all times the employee retains 'the ultimate burden of persuading the court that she has been the victim of intentional discrimination [or retaliation].'" <u>Combs-Burge v. Rumsfeld</u>, 170 Fed. Appx. 856, 863 (4th Cir. 2006) (quoting <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981)).

---

[5] There is no dispute with respect to this element. Monk clearly engaged in protected activity by filing the earlier federal lawsuit and by filing charges of discrimination with the EEOC.

5

With respect to Monk's two-day suspension without pay, the magistrate judge concluded that the suspension could be considered an adverse employment action,[6] but that Monk failed to establish a causal connection between her March 14, 2003 trial and the suspension. In response to the magistrate judge's report, Monk argues that there is ample evidence of continuing retaliatory conduct directed at her in the nine-month period between the trial and her suspension, and that such evidence is sufficient to satisfy the causation element. See Lettieri, 478 F.3d at 650 ("In cases where temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus. [Such evidence] can be sufficient to satisfy the element of causation."). Even assuming that the plaintiff can establish a prima facie case of retaliation, the court agrees with the magistrate judge that Perry has proffered a legitimate reason for Monk's two-day suspension, that Monk has failed to present factual support for the proposition that the asserted reason is pretext for retaliation, and thus, that Perry is entitled to summary judgment with respect to this claim.

To satisfy its burden of providing a legitimate, non-retaliatory reason for Monk's suspension, Perry "need not persuade the court that it was actually motivated by the proffered reason[]." Burdine, 450 U.S. at 254. Instead, Perry must only clearly set forth the reason for the claimed adverse action. Id. In this case, Perry asserts that Monk was suspended for two days in December of 2003, because she had two unexcused absences in November. Pursuant to Perry's

---

[6] As will be discussed, infra, in the context of a retaliation claim, an adverse employment action is one which "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006) (internal citation and quotation marks omitted).

6

employee handbook, employees are required to "notify their supervisor as soon as possible in advance of [an] anticipated tardiness or absence." (Resp. to Summ. J., Ex. 7, Handbook at pg. 21). The handbook further provides that "[p]oor attendance and excessive tardiness are disruptive," and that either "may lead to disciplinary action, up to and including termination of employment." (Resp. to Summ. J., Ex. 7, Handbook at pg. 21). According to her December 1, 2003 performance improvement plan, Monk failed to report to work on November 11, 2003 and again on November 19, 2003. Both were considered unexcused absences, since she did not attempt to speak with her supervisor on either date. The performance improvement plan notes that Monk had been told repeatedly that she must notify her supervisor prior to missing work, and that her next infraction could result in termination. Although Monk refused to sign the performance improvement plan, Monk concedes, for purposes of summary judgment, that she indeed had unexcused absences on those two dates.

Because Perry has clearly met its burden of proffering a legitimate, non-retaliatory reason for Monk's suspension, Monk is required to show that the asserted reason is pretext for retaliation. To make this showing, Monk must carry the burden of adducing evidence that "the proffered reason was not the true reason for the employment decision," by either directly demonstrating that a retaliatory reason more likely motivated Perry, or by indirectly demonstrating that Perry's proffered explanation is "unworthy of credence." Burdine, 450 U.S. at 256.

7

Monk attempts to satisfy her burden through comparative evidence.[7] That is, Monk points to another driver, Alan Timbrook, who she claims had comparable, if not worse, attendance records, but received more favorable treatment. Specifically, Monk emphasizes that the spreadsheets prepared by Mickey Perry, the company's vice president, indicate that Timbrook was a "no call no show" seven times before any action was taken by Monk and Timbrook's supervisor, and that even then, Timbrook was not suspended but, instead, received a written warning. As Monk acknowledges, however, Timbrook was ultimately <u>terminated</u> after he failed to show up for work on four additional occasions. Likewise, another employee, Joe Largent, was <u>terminated</u> after he refused to haul a load and left work for the day without permission on July 1,

---

[7] The court notes that Monk also states that Cecil Hahn, her supervisor, "could not identify any driver but Plaintiff who had been suspended" at his deposition. (Pl.'s Obj. at 8). This statement, however, is inaccurate. Instead, Hahn testified that he could not identify any employee who he had personally suspended, but that he had recommended employees for suspension:

| | |
|---|---|
| Q. | Now, you make reference to also time off. What do you mean by that? |
| A. | There can be suspensions, you know, for disciplinary purposes but I don't generally do that. I don't do that. That goes on up the command further. |
| Q. | Have you ever disciplined an employee with a suspension? |
| A. | Personally? |
| Q. | Yes. |
| A. | I'm not sure. I don't know. Maybe. I would have to – I don't know. |
| Q. | Sitting here now, can you tell me of any individual that you suspended? |
| A. | No. |
| Q. | Have you recommended people for suspension? |
| A. | Yes. |
| Q. | Tell me who you recommended for suspension. |
| A. | I think Joe Largent. |
| Q. | Anyone else? |
| A. | Not sure. Maybe Alan Timbrook. I'm not sure if we suspended him or not. |

(Pl.'s Resp. to Summ. J., Ex. 2, Hahn Dep. at pg. 25). The court also notes that Monk's December 1, 2003 performance improvement plan, which imposed the two-day suspension, was signed – not by Hahn – but by Dennis Perry, the company's president.

8

2003.

In any event, "[t]o establish pretext by comparing employees and their discipline, [a plaintiff] must establish that these other employees are similarly situated in all material respects." Cobb v. Potter, 2006 U.S. Dist. LEXIS 63118, at *28 (W.D. N.C. Aug. 22, 2006); see also Nichols v. Caroline County Bd. of Educ., 2004 U.S. Dist. LEXIS 2851, at *24 (D. Md. Feb. 23, 2004). The employees "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992); see also Heyward v. Monroe, 1998 U.S. App. LEXIS 30855, at *6 (4th Cir. Dec. 7, 1998) (holding that Heyward failed to show that the reason for her termination was pretextual, where there was no evidence "that any of the seven employees [allegedly treated more leniently than Heyward] had a disciplinary history similar to Heyward's").

Applying these principles, the court concludes that Monk has failed to allege facts which would establish, on the basis of comparative evidence, that Perry's legitimate reason for her two-day suspension was mere pretext for retaliation. Specifically, Monk has failed to identify evidence which shows that Monk and Timbrook had similar disciplinary histories at the time that they were sanctioned, or that there were no other differentiating circumstances that would distinguish their conduct. For instance, Mickey Perry's records indicate that prior to her two-day suspension in December of 2003, Monk was cited on six occasions for leaving work without authorization; six occasions for arriving to work late without authorization; and one occasion for

9

being belligerent with Dennis Perry.[8] Additionally, Monk's December 1, 2003 performance improvement plan indicates that she cursed at Dennis Perry upon being advised that she would be suspended for her unexcused absences.

While "statutes such as [Title VII] bar retaliation for exercising rights guaranteed by law, they do not 'clothe the complainant with immunity for . . . uncivil conduct in dealing with'" her superiors. Mesnick v. General Elec. Co., 950 F.2d 816, 828-829 (1st Cir. 1991) (quoting Jackson v. St. Joseph State Hosp., 840 F.2d 1387, 1391 (8th Cir. 1988)); see also Cobb, 2006 U.S. Dist. LEXIS 63118, at *32 ("Title VII does not prohibit an employer from disciplining an employee for unacceptable conduct simply because the employee has, at some previous time, engaged in conduct protected by Title VII."). Even assuming, arguendo, that Monk has presented a prima facie case of retaliation with respect to her two-day suspension, Perry has proffered a legitimate, non-retaliatory reason for the suspension, and Monk has failed to counter with evidence that the asserted reason is merely pretext for retaliation. Accordingly, the court agrees with the magistrate judge that Perry is entitled to summary judgment with respect to Monk's claim that she was suspended in December of 2003, in retaliation for proceeding to trial in her previous employment action.

## II. Perry's Failure to Provide an Electric Tarp

Monk also objects to the magistrate judge's recommendation with respect to Monk's claim that Perry retaliated against her by failing to provide an electric tarp for her truck. As previously stated, Monk asserts that she did not quit her job with Perry, but rather was

---

[8] The court notes that Mickey Perry's records indicate that no action was taken by management on most of these occasions.

10

constructively discharged on June 2, 2005, when Perry notified her that she would be driving the same truck without any modifications upon her return to work following shoulder surgery.

The record reveals that Monk drove a truck with a manual tarp at all times during her nine-year period of employment with Perry. In the summer of 2003, Monk began complaining that her manual tarp was difficult to roll up and requested that Perry provide an electric tarp. In response to Monk's complaints, Perry's maintenance department worked on Monk's tarp, replaced the tarp, and lowered the crank mechanism on her truck so that she "could crank it while [she] was standing on the ground." (Mot. for Summ. J., Ex. B, Monk Dep. at 185).

Examination notes from Amherst Family Practice indicate that in December of 2003, Monk was diagnosed with a strained thumb and shoulder. Monk alleged that she had injured herself on May 19, 2003, when she cranked the tarp on her truck. The examination notes from that appointment, as well as from a follow-up appointment on December 17, 2003, indicate that Monk could work "full duty." (Resp. to Summ. J., Ex. 19).

Monk began seeing an orthopaedic surgeon, Dr. John H. Zoller, on November 5, 2004. Dr. Zoller noted that Monk complained of right shoulder pain, and that she reported that the pain increased when she had "to do a lot of cranking of a tarp on [her] dump truck." (Resp. to Summ. J., Ex. 22). Dr. Zoller diagnosed Monk with impingement syndrome, and advised her to return in six weeks.

On December 3, 2004, Monk reported to Perry that she was unable to work because she injured herself using the tarp on her truck. Perry subsequently hired an independent consultant to examine the manual tarp on the truck assigned to Monk. The consultant performed an ergonomic task analysis, which "focused on the task of un-tarping a loaded truck using a crankshaft

11

mechanism to roll the tarp off of a load." (Mot. for Summ. J., Ex. I at pg. 4). The consultant noted that "[c]ranking is typically performed with one hand," that a "[l]ight grasp is required," and that "one driver demonstrated being able to perform the cranking using only two fingers." (Mot. for Summ. J., Ex. I at pg. 4). Based on the amount of initial and sustained force required to perform the task, the consultant concluded that the task would be "acceptable for all but 10% of the female population," and that "the only person that would be limited with this task would be someone with a diagnosed problem with both upper extremities as only one extremity would be required to perform the task." (Mot. for Summ. J., Ex. I at pg. 4) (emphasis added). Likewise, a risk control specialist, who observed the task of cranking a tarp on one of Perry's dump trucks, found that a "person can easily operate the crank with either hand." (Mot. for Summ. J., Ex. I at pg. 6).

On December 20, 2004, Dr. Zoller completed a physical capabilities form, on which he indicated that Monk could not use her right arm until after her next evaluation. Likewise, on January 14, 2005, Dr. Zoller noted that Monk could not use her right arm. Thus, when Monk returned to work on January 17, 2005, she was sent home at noon, since she could not drive a manually operated dump truck with only one arm. Monk was subsequently granted temporary disability leave, and she underwent surgery on her right shoulder on March 24, 2005. On May 20, 2005, Dr. Zoller authorized Monk to return to work. Dr. Zoller noted that plaintiff was limited in the use of her right arm to the extent that she could not engage in any overhead reaching, pushing, or pulling with that arm, but that she could use her left arm without any restrictions.

By letter dated May 23, 2005, Monk advised Perry that she had been authorized to return to work by her doctor, and requested that the company let her know when she should report to work. Mickey Perry responded to Monk's letter three days later. Based on the most recent report from Dr. Zoller, Perry advised Monk that she was clear to return to work as a truck driver for the company, and that assuming she could perform all of the duties required of that position, the company would like for her to return to work on May 31, 2005. Rather than returning to work as directed, Monk wrote Mickey Perry a letter on that date, inquiring as to whether her dump truck would be equipped with an electric tarp, and if not, how much it would cost for her to buy an electric tarp. By letter dated June 2, 2005, Mickey Perry advised Monk that the manual tarp on her truck had not been modified or replaced. He also emphasized that, because she had been cleared to return to work by her doctor, the company expected her to perform the same duties that she performed before being placed on medical leave. Monk did not respond to this letter or return to work for Perry.

For the reasons that follow, the court agrees with the magistrate judge that Perry's failure to provide an electric tarp for Monk's truck, after she had been cleared to return to work, did not constitute a materially adverse action. As previously stated, to satisfy the second element of a prima facie case of retaliation, a plaintiff must show that her employer took an adverse employment action against her. In Burlington N. & Santa Fe Ry. v. White, the Supreme Court held that to constitute an adverse employment action, for purposes of Title VII's anti-retaliation provision, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which, in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 68 (internal

citation and quotation marks omitted). The United States Court of Appeals for the Fourth Circuit has emphasized that this standard "is still a heavy burden for the plaintiff: the alleged adverse action must be material." Csicsmann v. Sallada, 211 Fed. Appx. 163, 168 (4th Cir. 2006). As the Supreme Court explained in White:

> We speak of <u>material</u> adversity because we believe it is important to separate significant from trivial harms. Title VII, as we have said, does not set forth a general civility code for the American workplace. An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. The antiretaliation provision seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms. It does so by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.

White, 548 U.S. at 68 (emphasis in original) (internal citations and quotation marks omitted). Additionally, the Supreme Court noted that the "standard for judging harm must be objective," focusing on the "reactions of a <u>reasonable</u> employee." Id. (emphasis in original).

Applying this objective standard to the facts of this case, the court agrees with the magistrate judge that Perry's failure to provide an electric tarp cannot be characterized as a materially adverse action. Monk's treating orthopaedic surgeon was aware of the particular physical requirements of her job as a dump truck driver for Perry, and nonetheless cleared her to return to work on May 20, 2005. Moreover, it is undisputed that the crankshaft mechanism for the manual tarp could be operated with either arm, and that the plaintiff could use her left shoulder, arm, and hand without any restrictions. Monk performed the same job with the same type of manual tarp for years prior to her injury, and there is no evidence that the employer acted

14

in any way so as to make this task more difficult in physical requirements. There is also no medical evidence that Monk did not possess the physical capacity to perform this task. Consequently, the court agrees with the magistrate judge that not being able to use her <u>right</u> arm to operate her manual tarp was "a 'minor annoyance' which would not [have] 'dissuade[d] a reasonable worker from making or supporting a charge of discrimination.'" (R&R at 14) (quoting <u>White</u>, 548 U.S. at 68). For these reasons, the court also agrees with the magistrate judge that Monk was not constructively discharged as a result of being required to drive the same dump truck without any modifications. See <u>James v. Booz-Allen & Hamilton, Inc.</u>, 368 F.3d 371, 378 (4th Cir. 2004) ("To establish constructive discharge, a plaintiff must be able to show that his former employer deliberately made an employee's working conditions intolerable, and thereby forced him to quit . . . . [M]ere . . . difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.") (internal citations and quotation marks omitted). Accordingly, Perry is also entitled to summary judgment with respect to this retaliation claim.

## Conclusion

For the reasons stated, the court will adopt the magistrate judge's recommended disposition and grant Perry's motion for summary judgment.[9] The Clerk is directed to send

---

[9] Having concluded that Perry is entitled to summary judgment on the merits of the remaining retaliation claims at issue, the court finds it unnecessary to determine whether any of Monk's allegations of retaliation are procedurally barred.

15

certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 29th day of September, 2008.

_____
United States District Judge